Carol ARCE, Individually and as Next Friend of Lyndsey Arce and Lauren Arce, Raul S. Alvarado, David H. Anderson, Freddy Barfield, Dorothy Barfield, Mercer Black, Richard W. Bradley, Jr., James Karl Bryant, Sandra Bryant, Stephen Lloyd Bryant, Thomas G. Butcher, Julane Campbell, Jason Campbell, Justin Campbell, Jaret Campbell, Dennis M. Curry, Ricky L. Dannelley, Glenn E. Deshotel, John L. Dixon, Silverrol Ferguson, Julian Garcia, Jr., Austin Gill, Robert F. Gudz, Joe Alan Holzworth, Wesley S. Hood, Bobby Ray Jones, James E. Kerr, Stanley P. Korenek, James L. Lauderdale, Jesse H. Luna, Ronald D. Lyon, Walter E. Marbury, Jr., John Martinez, Patrick McCourtney, Gary Mcpherson, Lisa McPherson, Carol D. Montelongo, Pete Montoya, Iii, Herver Mosley, Terry L. Mullins, Adolfo Ochoa, Jr., Philip Owens, Jesus R. Pena, Carl T. Richardson,

Glenn W. Robbins, Johnnie Rogers, Stephen R. Ross, Amanda Ann Seaman, Terry Wayne Simpson, Allen Smith, Jr., Helga Sieglinde Thompson, Robert A. Wash, and Calvin L. Williams, Appellants,

v.

David BURROW, Walter Umphrey, John E. Williams, F. Kenneth Bailey, Wayne Reaud, and Umphrey, Burrow, Reaud, Williams & Bailey, Appellees.

No. 14–95–00360–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 30, 1997.

Rehearing Overruled Jan. 15, 1998.

William V. Dorsaneo, III, Dallas, William J. Skepnek, Lawrence, KS, for appellants.

David M. Gunn, Houston, for appellees.

Before YATES, FOWLER and EDELMAN, JJ.

## CORRECTED OPINION ON MOTION FOR REHEARING

FOWLER, Justice.

Our opinions of August 28, 1997, and October 23, 1997, are withdrawn and this one substituted for them. The issues presented in this appeal from a summary judgment all revolve around one main issue: whether fee forfeiture is a viable remedy in Texas when an attorney breaches a fiduciary duty to a client, and, if fee forfeiture is a viable remedy, how it is applied. Concluding that fee forfeiture is a viable remedy, we reverse and remand in part and affirm in part.

On October 23, 1989, a series of explosions rocked the Phillips 66 chemical plant in Pasadena, Texas. Twenty-three people were killed and hundreds were injured. Appellants hired appellees to file their individual suits against Phillips. All appellees agreed to payment on a contingency fee basis.

According to appellants, appellees did not develop or evaluate their claims individually, and instead, without discussion or authority, reached an "aggregate settlement" with Phillips for the entire suit. Only then were appellants "summoned" for a brief, twenty-minute meeting to discuss the settlement arrangements. Appellants allege appellees lied, and/or intimidated them into accepting the settlement and, in the process, "skimmed-off" sixty million dollars in attorneys' fees.

Appellees, on the other hand, claim appellants became unhappy with their settlements when rumors began to circulate about larger settlements received by plaintiffs who were represented by other attorneys. Appellees allege appellants then began to believe their settlements were unfair and blamed their attorneys. Appellees contend there was no "aggregate settlement," the settlements were adequate and fair.

Ultimately, appellants filed suit against appellees alleging breach of fiduciary duty, fraud, violations of the Texas Deceptive Trade Practices Act (DTPA), negligence, and breach of contract. They asked to be awarded all fees paid to appellees, punitive or special damages under the DTPA, prejudgment and postjudgment interest, and attor-

ney's fees. According to appellees, however, appellants' pleadings covered liability, but were "strangely vague" about damages. Appellees filed a motion for summary judgment and a first supplemental motion for summary judgment alleging three grounds: (1) no aggregate settlement took place; (2) estoppel and ratification barred appellants from attacking the settlement agreements; and (3) nothing appellees did caused any damage to appellants, i.e., appellees' settlements were fair and reasonable.

■ On January 11, 1995, the trial court held a hearing on the original and first supplemental motion for summary judgment. The court denied the motions and sent a letter to the parties explaining its ruling. The letter first stated that a fact issue existed "on whether there was an aggregate settlement of the plaintiffs' claims against Phillips" and second, that the defendants had not addressed the plaintiffs' claims for damages on the aggregate settlement.[1]

Subsequently, the court held another hearing on appellees' second supplemental motion for summary judgment, which included and incorporated their original and first supplemental motions for summary judgment. After the hearing, the trial court entered an order in which it found the motion should be denied as to the claim that there was no breach of duty because the court found there was evidence of an aggregate settlement sufficient to create a fact issue. The court also found, however, that the motion should be granted because (1) the summary judgment proof established that appellants suffered no damages as a result of any breach of duty, (2) the affidavits of Roberta Edwards, M.D., and Harry Wilson did not controvert the

affidavit of Robert Malinack with competent evidence, and (3) fee forfeiture is not an element of damages, but a legal remedy that a court may apply only after a jury has found a breach of duty with resulting actual damages. Appellants perfected this appeal.

■ In reviewing a trial court's order granting summary judgment, the court must determine whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970). The movant has the burden to show there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Evidence favorable to the non-movant will be taken as true and every reasonable inference indulged in its favor. *Id.*

In points of error one through four, appellants contend the trial court erred in granting summary judgment in favor of appellees.[2] Within these points of error, appellants raise several arguments. We will begin our review by addressing appellants' third point of error concerning the concept of fee forfeiture and its application, if any, in Texas.

### I. FEE FORFEITURE

In their third point of error, appellants argue that summary judgment was improper because they were inherently damaged by breaches of several fiduciary duties, and fee forfeiture is the appropriate remedy for those breaches.[3] To be entitled to the remedy of fee forfeiture, they do not have to prove

---

1. The letter's only import is background information, for the judgment is the only place we can look for the reasons the judgment was entered. *Shannon v. Tex. Gen. Indem. Co.*, 889 S.W.2d 662, 663 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex.App.—Texarkana 1993, writ denied).

2. Point of error one is a general point stating "The trial court erred in granting the defendants' motion for summary judgment." Points of error two through four are specific contentions subsumed under this general contention. We will refer to a specific argument by the point of error

to which it relates. So, we will rule on point of error one by ruling on the points containing a specific contention.

3. Appellants contend appellees breached their fiduciary duties by (1) soliciting business through a lay intermediary, (2) failing to fully investigate and assess individual claims, (3) failing to communicate offers received and demands made, (4) entering into an aggregate settlement, (5) agreeing to limits on their practice of law, and (6) intimidating clients into settlement through subtle and overt threats, coercion, and false entreaties or promises.

appellees caused actual damage—proof of a breach is enough. In support of this position, they remind us that the trial court found that a fact issue exists on at least one of the claimed breaches, aggregate settlement.

■■■ An aggregate settlement occurs when an attorney, who represents two or more clients, settles the entire case on behalf of those clients without individual negotiations on behalf of any one client. *See Scrivner v. Hobson,* 854 S.W.2d 148, 152 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding). The attorney owes a duty of loyalty and good faith to *each* client, and it is the ethical responsibility of an attorney representing multiple clients to obtain individual settlements, unless those clients are informed and consent.[4] *See Judwin Properties v. Griggs & Harrison,* 911 S.W.2d 498, 506 (Tex.App.—Houston [1st Dist.] 1995, no writ). Settling a case in mass without consent of the clients is unfair to the clients and may result in a benefit to the attorney (speedy resolution and payment of fees) to the detriment of the clients (decreased recovery). Unfairness is the cornerstone in an action for breach of fiduciary duty. *Id.* Thus, when an attorney enters into an aggregate settlement without the consent of his or her clients, the attorney breaches the fiduciary duty owed to those clients.[5] Appellants contend that when such a breach occurs, forfeiture, without the need for proof of damage, is the appropriate remedy.

As to the amount of forfeiture, appellants argue that once a breach is proved, the entire fee must be forfeited. In response, appellees contend (1) there can be no forfeiture without actual harm to the client, and (2) total fee forfeiture is not automatic, rather the amount of forfeiture, if any, is in the trial court's discretion.

Considering the points appellants have raised and the responses to them, the main issue we must determine is whether an attorney's fees can be forfeited when the attorney has breached a fiduciary duty owed the client by entering into an aggregate settlement.[6] If so, we must decide: (1) what a party must prove to be entitled to the remedy of fee forfeiture; (2) whether forfeiture of the entire fee is automatic or whether a portion of the fee be forfeited, with the attorney retaining the remainder; and (3) whether forfeiture is a question for the trial court or the trier of fact.[7] There is a corollary to the second question: if only part of the fee is subject to forfeiture, what factors should be considered in determining the amount?

■■■ Inherent in any agency relationship is the fiduciary duty an agent owes to his or her principal. *Maryland Ins. Co. v. Head Indus. Coatings and Servs., Inc.,* 906 S.W.2d 218, 233 (Tex.App.—Texarkana 1995), *rev'd on other grounds,* 938 S.W.2d 27 (Tex. 1996); *Republic Bankers Life Ins. Co. v. Wood,* 792 S.W.2d 768, 778 (Tex.App.—Fort Worth 1990, writ denied). A fiduciary duty is a formal, technical relationship of confidence and trust imposing great duties upon a fiduciary as a matter of law. *Central Sav. & Loan Ass'n v. Stemmons Northwest Bank,*

---

4. Furthermore, it is a violation of the Texas Disciplinary Rules of Professional Conduct of an attorney who represents two or more clients to make an aggregate settlement without the clients' consent. Rule 1.08(f) states:

> A lawyer who represents two or more clients shall not participate in making an aggregate settlement of the claims of or against the clients ... unless each client has consented after consultation, including disclosure of the existence and nature of all the claims or pleas involved and of the nature and extend of the participation of each person in the settlement. Tex. Disciplinary R. Prof. Conduct 1.08(f) (1991), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. (Vernon Pamph. 1997) (State Bar Rules art. X, § 9).

5. We note that neither appellants nor appellees have argued that entering into an aggregate settlement without the clients' consent is not a breach of fiduciary duty.

6. This opinion is limited to the type of fiduciary duty potentially breached in this case. It does not address or consider if breaches of *any* fiduciary duty owed by a lawyer to a client would support fee forfeiture.

7. We must address this last issue because the trial court notified the parties by letter that "... fee forfeiture is not an element of damages, but a legal remedy that a Court (as opposed to a jury) *may* apply as a matter of law *after* a jury has found both breach of duty by an attorney and damages arising out of that breach."

*N.A.,* 848 S.W.2d 232, 243 (Tex.App.—Dallas 1992, no writ). When parties enter a fiduciary relationship, each consents to have its conduct toward the other measured by high standards of loyalty as exacted by courts of equity. *S.V. v. R.V.,* 933 S.W.2d 1, 34 (Tex. 1996) (J. Owen, dissenting) (citing *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197, 205 (1958)); *Murphy v. Canion,* 797 S.W.2d 944, 948 (Tex.App.—Houston [14th Dist.] 1990, no writ) (citing *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 788 (1938)). The term fiduciary "refers to integrity and fidelity." *Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 512 (Tex.1942). The law requires more of a fiduciary than "arms-length marketplace ethics." *Douglas v. Aztec Petroleum Corp.,* 695 S.W.2d 312, 318 (Tex.App.—Tyler 1985, no writ); *see Kinzbach Tool Co. v. Corbett–Wallace Corp.,* 138 Tex. 565, 160 S.W.2d 509, 514 (1942). The duty owed is one of loyalty and good faith, strict integrity, and fair and honest dealing. *Id.* There is a "general prohibition against the fiduciary's using the relationship to benefit his personal interest, except with the full knowledge and consent of the principal." *Hawthorne v. Guenther,* 917 S.W.2d 924, 934 (Tex.App.—Beaumont 1996, writ denied) (quoting *Chien v. Chen,* 759 S.W.2d 484, 495 (Tex.App.—Austin 1988, no writ)). Fiduciaries may not benefit from their own misdeeds or use the effects of their own actions as a shield from liability. *S.V.,* 933 S.W.2d at 35 (J. Owen, dissenting). Fiduciary relationships are recognized historically in a variety of legal relations, including those between attorney and client. *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 623 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *see Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex. 1988). A fiduciary relationship exists between attorneys and clients as a matter of law. *See Cooper v. Lee,* 75 Tex. 114, 12 S.W. 483, 486 (1889). Because the relationship between attorney and client is highly fiducia-ry in nature, *Willis,* 760 S.W.2d at 645, dealings between attorney and client require the utmost good faith. *Judwin Properties,* 911 S.W.2d at 506. For the same reasons, dealings, intentions, and intendments between attorney and client are subject to exacting scrutiny. *Archer v. Griffith,* 390 S.W.2d 735, 739 (Tex.1964). As long ago as 1930, Texas courts recognized that public policy and the standards of the legal profession required this strict scrutiny. *Bryant v. Lewis,* 27 S.W.2d 604, 606 (Tex.Civ.App.—Austin 1930, writ dism'd w.o.j.).

■ As a remedy for a breach of a fiduciary duty, Texas has long recognized the concept of fee forfeiture in the principal-agent relationship.[8] *See, e.g., Kinzbach Tool,* 160 S.W.2d at 514 (Tex.1942). *See also* RE-STATEMENT (SECOND) OF AGENCY § 469 (1958). While we have found no Texas cases specifically involving fee forfeiture for a breach of the fiduciary duty in the attorney-client relationship, we discern no reason to carve out an exception for breaches of fiduciary duty in the attorney-client relationship. Thus, we hold that fee forfeiture is a recognized remedy when an attorney breaches a fiduciary duty to his or her client.

■ That leaves us with four sub-issues: (1) what a plaintiff must prove to be entitled to fee forfeiture, (2) whether forfeiture should be automatic and total or decided on a case by case basis, (3) who should decide the forfeiture issue, judge or jury, and (4) what factors should be considered in deciding whether to forfeit fees. To answer the first of these—what a plaintiff must prove to be entitled to fee forfeiture—we refer to those Texas cases dealing with forfeiture in the typical principal-agent relationship. In *Kinzbach Tool,* Corbett–Wallace Corporation desired to sell its patent rights on a tool to Kinzbach Tool. 160 S.W.2d at 510. To facilitate the sale, Corbett contacted an employee of Kinzbach Tool, G.E. Turner. *Id.* Corbett

---

8. Texas also recognizes other equitable remedies for breaches of fiduciary duty including rescission or the imposition of a constructive trust. *Chien v. Chen,* 759 S.W.2d 484, 497 (Tex.App.—Austin 1988, no writ) (citing *Thigpen v. Locke,* 363 S.W.2d 247, 252 (Tex.1962) (constructive trust); *Consolidated Gas & Equip. Co. of America v. Thompson,* 405 S.W.2d 333, 336 (Tex.1966) (constructive trust)). *See also Wils v. Robinson,* 934 S.W.2d 774, 782 (Tex.App.—Houston [14th Dist.] 1996) (recission), *vacated without reference to the merits,* 938 S.W.2d 717 (Tex.1997); *Miller v. Miller,* 700 S.W.2d 941, 945 (Tex.App.—Dallas 1985, writ ref'd n.r.e.) (recission).

agreed to pay Turner a commission out of the money paid to it if the contract was sold to Kinzbach Tool. *Id.* At their meeting, Corbett told Turner that it wanted at least $20,-000 for the contract, but instructed Turner to keep this information to himself. *Id.*

Turner, a trusted Kinzbach Tool employee, returned to his own employer and approached the officers of the company about the contract. *Id.* at 510–11. The president instructed Turner to find out Corbett's asking price, and advised Turner that Kinzbach Tool would be willing to pay as much as $25,000. *Id.* at 511. Turner never told anyone at Kinzbach Tool that Corbett would be willing to sell the contract for $20,000, nor did he tell anyone he would receive a commission from Corbett. *Id.*

Ultimately, the companies closed the deal and Kinzbach Tool agreed to pay Corbett $25,000 for the contract. *Id.* Corbett paid Turner a commission, but Kinzbach Tool found out about it and refused to pay the full sale price. *Id.* Corbett in turn refused to accept less than $25,000, so Kinzbach filed suit against the company and Turner to recover Turner's commission. *Id.* at 511–12. Corbett cross-claimed for breach of contract. *Id.*

Corbett and Turner answered Kinzbach Tool's claim by arguing that Kinzbach Tool was not damaged because the patent was worth what the company paid for it. *Id.* at 514. The supreme court rejected their argument. After finding that Turner was in a fiduciary relationship with his employer, the court wrote the following:

> A fiduciary cannot say to the one whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired. It is the law that in such instances if the fiduciary "takes any gift, gratuity, or benefit in violation his duty, or acquires any interest adverse to his principal, without a full dis-

> closure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received."

*Id.* (quoting *United States v. Carter,* 217 U.S. 286, 305–08, 30 S.Ct. 515, 520, 54 L.Ed. 769, 775 (1910)). *See also Douglas,* 695 S.W.2d at 318 (holding it is fundamental principal of Texas law that agent who acts adversely to principal or otherwise breaches fiduciary obligation is not entitled to compensation); *Russell v. Truitt,* 554 S.W.2d 948, 951 (Tex. Civ.App.—Fort Worth 1977, writ ref'd n.r.e.) (quoting *Moore v. Kelley,* 162 S.W. 1034, 1037 (Tex.Civ.App.—Amarillo 1914, writ ref'd)) (holding agent who acts adversely to principal or fails to disclose material information forfeits right to compensation); *Anderson v. Griffith,* 501 S.W.2d 695, 702 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.) (holding that when agent breaches his fiduciary obligation to his principal, he forfeits all compensation for his service as agent). *See also* RESTATEMENT (SECOND) OF AGENCY § 469 cmt. a (1958).

*Russell v. Truitt,* a case decided by the Second Court of Appeals, is similar to *Kinzbach Tool.* Several joint venturers in an apartment project appointed Russell their agent for the project. *Russell,* 554 S.W.2d at 950. After the project's failure, the joint venturers brought suit against Russell and an individual joint venturer, Campbell, for breach of fiduciary duty, *Id.* at 951, and a jury found in favor of the joint venturers on the issue. Russell and Campbell appealed, alleging that their actions were not the proximate cause of the project's failure. *Id.* at 952. In affirming the judgment in favor of the joint venturers, the court of appeals rejected this argument, finding that it ignored the real issue in the case. Specifically, the court held:

> If the letter agreement constitutes a breach of the defendants' [Russell's and Campbell's] equitable duties as a fiduciary, *it is unnecessary to decide whether the breach was the proximate cause of the project's failure. The breach automatically results in the forfeiture of the agent's compensation.*

*Id.* (emphasis added).

More recently, the First Court of Appeals reached the same result in *Judwin Proper-*

*ties,* 911 S.W.2d at 507. In that case, Judwin alleged that its attorneys disclosed confidential and privileged information concerning the attorneys' representation of Judwin in certain lawsuits. *Id.* Judwin contended this was a breach of fiduciary relationship. *Id.* While the court found there was no breach of fiduciary duty, it noted that when an attorney has used the attorney-client relationship to the detriment of the client, the client need not prove causation for breach of fiduciary duty. *Id.* (citing *Kinzbach Tool,* 160 S.W.2d at 514).

We interpret the holdings in these cases by the Supreme Court and the First and Second Courts of Appeals to hold that the breach of the fiduciary relationship inherently damaged the plaintiff, and thus, there was no need to prove causation or damage. *See Kinzbach Tool,* 160 S.W.2d at 514; *Judwin Properties,* 911 S.W.2d at 507; *Russell,* 554 S.W.2d at 952. Under all three cases, one who claims a breach of fiduciary relationship need only prove the existence of a breach to be entitled to fee forfeiture. *See Kinzbach Tool,* 160 S.W.2d at 514; *Judwin Properties,* 911 S.W.2d at 507; *Russell,* 554 S.W.2d at 952. The basis for such a rule is clear: there should be a deterrent to conduct which equity condemns and for which it will grant relief. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 584 (Tex.1963). Courts impose damages on parties who violate a fiduciary duty to punish the party's breach of trust. *Phillips v. Phillips,* 820 S.W.2d 785, 792 (Tex.1991) (J. Gonzalez, dissenting). Fee forfeiture provides the injured client with a remedy, but it also punishes the attorney for the breach of fiduciary duty and deters further lapses in professional conduct. *Perl v. St. Paul Fire & Marine Ins. Co.,* 345 N.W.2d 209, 214 (Minn.1984).

Texas is not the only state to require fee forfeiture in a fiduciary context. In fact, our holding is supported by cases from other jurisdictions addressing the issue specifically in the context of the attorney-client relationship. In the *Perl* trilogy, the Minnesota Supreme Court held that no causation or damage need be proved to invoke fee forfeiture because "the injury lies in the client's justifiable perception that he or she has or may have received less than the honest advice and zealous performance to which a client is entitled." *Gilchrist v. Perl,* 387 N.W.2d 412, 415 (Minn.1986); *Perl v. St. Paul Fire & Marine Ins. Co.,* 345 N.W.2d 209, 213 (Minn.1984); *Rice v. Perl,* 320 N.W.2d 407, 411 (Minn.1982). *See also Hendry v. Pelland,* 73 F.3d 397 (D.C.Cir.1996) (holding forfeiture for conflict of interest appropriate regardless of lack of harm); *Silbiger v. Prudence Bonds Corp.,* 180 F.2d 917, 921 (2d Cir.1950) (stating attorney with conflict of interest may not avoid forfeiture solely by showing no actual harm), *cert. denied,* 340 U.S. 831, 71 S.Ct. 37, 95 L.Ed. 610 (1950); *Eriks v. Denver,* 118 Wash.2d 451, 824 P.2d 1207, 1213 (Wash.1992) (holding court may require fee forfeiture for conflict of interest without showing of harm); Thomas D. Morgan, *Sanction and Remedies for Attorney Misconduct,* 19 S. ILL. U. L.J. 343, 351 (1995) (stating that fee forfeiture is available even where client has suffered no loss as a result of attorney's alleged misconduct).[9]

---

9. Though some jurisdictions require a showing of damage, we find the better approach is that represented by the Minnesota cases. *See Frank v. Bloom,* 634 F.2d 1245, 1257 (10th Cir.1980) (requiring client to show damage to obtain forfeiture); *Crawford v. Logan,* 656 S.W.2d 360, 365 (Tenn.1983) (relying on *Bloom* to require client to show prejudice to obtain fee forfeiture). The court in *Bloom* approached the forfeiture issue as arising in the context of a legal malpractice action, *not a claim of breach of fiduciary duty.* 634 F.2d at 1257. In fact, the court discussed how the plaintiff failed to present an expert or other evidence to prove that the lawyer's allegedly improper actions were illegal or unethical. Failing this, the evidence merely supported a claim for legal malpractice. Thus, being presented only with a claim for legal malpractice, the court refused to order a forfeiture without a showing of damages. We agree that a simple negligence action requires a client to prove duty, breach, causation, and damage, and, later in this opinion, we affirm that portion of the trial court's judgment granting judgment against appellants on their negligence and other claims because they did not prove damages. But, a breach of fiduciary duty claim, is not the same as an ordinary claim of malpractice based on negligence. Because we are of the opinion that *Bloom* involved a cause of action that requires different proof than a breach of fiduciary duty claim, we do not find it persuasive authority for this case. For the same reason, we consider *Crawford* reasoning to be flawed. Although *Crawford did* involve a breach of fiduciary duty

Furthermore, the proposition that a client need only prove a breach is consistent with Texas case law regarding the general principal-agent relationship. This approach is more appropriate because it can be difficult to ascertain the harm resulting from an attorney's misconduct. The harm may be intangible, such as the client's loss of loyalty in the attorney and faith in the legal system itself.

██ Having determined that fee forfeiture exists in Texas in the context of the attorney-client relationship, and that all the client need prove is a breach of fiduciary duty by the attorney, we must now address appellants' claim that forfeiture is complete and automatic upon proof of a breach. This position has support in the Texas cases involving the general principal-agent relationship. The courts have sanctioned complete forfeiture, *see Kinzbach Tool,* 160 S.W.2d at 514; *Douglas,* 695 S.W.2d at 318; *Russell,* 554 S.W.2d at 951 (quoting *Moore,* 162 S.W. at 1037); *Anderson,* 501 S.W.2d at 702, requiring the agent to forfeit the fee usually earned in a single, specific transaction. *See also* RESTATEMENT (SECOND) OF AGENCY § 469 cmt. a (1958). Yet, none of these cases applied forfeiture within the context of the attorney-client relationship. The attorney's service to the client frequently is more complex than a principal-agent relationship created for a single transaction such as the building of an apartment complex as in *Russell.* The attorney performs many functions for a client throughout the representation. Some of the acts performed on behalf of the client inure to the client's benefit and may occur before any breach of fiduciary duty. It would be unfair to require a total forfeiture in such a situation. *See Searcy, Denney, Scarola, Barnhart & Shipley, v. Scheller,* 629 So.2d 947, 954 (Fla.Dist.Ct.App.1993). Thus, we find a distinction, for purposes of the potential amount of forfeiture, between the typical agency relationship and the attorney-client relationship. For guidance, we look once again to other jurisdictions addressing the forfeiture question in the context of the attorney-client relationship.

In the first case of the *Perl* trilogy, the Minnesota Supreme Court held the failure by an attorney to disclose his conflict of interest constituted a breach of fiduciary duty entitling the client to a complete forfeiture of attorney's fees. *Rice v. Perl,* 320 N.W.2d at 411. Two years later, in dictum, the same court noted that fee forfeiture is similar to a punitive damage, and that exceptions might exist to complete and automatic forfeiture. *Perl v. St. Paul Fire & Marine Ins. Co.,* 345 N.W.2d at 214 n. 5. The court then suggested that the factors the trier of fact might consider in determining the amount of fee forfeiture, if any, were factors contained in Minnesota's punitive damages statute, and used when awarding punitive damages. *Id.* This suggestion became the rule two years later. The Minnesota Supreme Court held when no actual fraud or bad faith is involved, when no actual harm to the client is sustained, and particularly when there are multiple plaintiffs, the better approach is to determine the amount of the fee forfeiture by considering the punitive damage factors in the Minnesota punitive damage statute. *Gilchrist v. Perl,* 387 N.W.2d at 417.

We agree with the Minnesota Supreme Court that an attorney need not necessarily forfeit his or her entire fee because of a breach of fiduciary duty. It is possible that, before the breach occurred, the attorney may have provided valuable services to the client for which compensation is appropriate. *See Scheller,* 629 So.2d at 950. Denying the attorney all compensation in such situations would be excessive, giving the client a windfall, allowing the client to benefit from the attorney's services without having to pay for them. *See,* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. b (Proposed Final No. 1, 1996).[10] The harshness of

claim, it relied exclusively on *Bloom* to support its conclusion that the plaintiff client must show prejudice or damages before a forfeiture will be ordered. However, since *Bloom* involved a different cause of action, we do not think it supports the *Crawford* conclusion.

10. At the time of this writing, the draft of the Restatement (Third) of the Law Governing Lawyers has not been considered by the members of The American Law Institute. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 n.a (Proposed Final Draft No. 1, 1996). Therefore, we refer to it cautiously, acknowledging that any portions of

complete forfeiture, moreover, could lead to rare enforcement. *Id.* Fee forfeiture is an equitable remedy, and, as such, the amount of the forfeiture is dependent upon the facts of each case. *See International Bankers,* 368 S.W.2d at 584 (holding that equity allows forfeiture of profits when officers and directors of corporation breach their fiduciary duty); *Russell,* 554 S.W.2d at 955 (stating that forfeiture of agent's fee is a form of equitable relief awarded for breach of fiduciary duty). As the Texas Supreme Court stated, "The limits beyond which equity should not go in its reactions are discoverable in the facts of each case which give rise to equitable relief." *Holloway,* 368 S.W.2d at 584. In determining the amount of forfeiture, if any, to which the client may be entitled, certain factors should be considered. We have studied the factors suggested by the Restatement (Third) of the Law Governing Lawyers and the Minnesota Supreme Court's suggestion to refer to the factors used to determine the award of punitive damages. The Restatement suggests consideration of four factors: (1) the extent of the attorney's misconduct; (2) the willfulness of the attorney's misconduct; (3) any threatened or actual harm to the client; and (4) the adequacy of other available remedies. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 49 cmt. d (Proposed Final No. 1, 1996). Under the Texas punitive damage statute, the trier of fact considers:

(1) the nature of the wrong;

(2) the character of the conduct involved;

(3) the degree of culpability of the wrong-doer;

(4) the situation and sensibilities of the parties concerned;

(5) the extent to which such conduct offends a public sense of justice and propriety; and

(6) the net worth of the defendant.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.011(a) (Vernon 1997).

We have considered all of the factors listed above, and hold that in determining the amount, if any, of the fee forfeiture, the entity assessing forfeiture should consider: (1) the nature of the wrong committed by the attorney or law firm; (2) the character of the attorney's or firm's conduct; (3) the degree of the attorney's or firm's culpability, that is, whether the attorney committed the breach intentionally, willfully, recklessly, maliciously, or with gross negligence; (4) the situation and sensibilities of all parties, including any threatened or actual harm to the client; (5) the extent to which the attorney's or firm's conduct offends a public sense of justice and propriety; and (6) the adequacy of other available remedies.

■■■■ Having decided that fee forfeiture is an equitable remedy, *see International Bankers,* 368 S.W.2d at 584 (holding that equity allows forfeiture of profits when officers and directors of corporation breach their fiduciary duty); *Russell,* 554 S.W.2d at 955 (stating that forfeiture of agent's fee is a form of equitable relief awarded for breach of fiduciary duty), we now must determine if a judge or jury should decide whether forfeiture is to be applied as a remedy. As appellees point out in their brief on rehearing, there is no common-law right to a jury trial in equity. *See Casa El Sol–Acapulco, S.A. v. Fontenot,* 919 S.W.2d 709, 715 (Tex.App.—Houston [14th Dist.] 1996, writ dism'd by agreement) (citing *Trapnell v. Sysco Food Servs. Inc.,* 850 S.W.2d 529, 543 (Tex.App.—Corpus Christi 1992), *aff'd,* 890 S.W.2d 796 (Tex.1994)). Two provisions of the Texas Constitution, however, insure the right to a jury trial in Texas. *See* Tex. Const. art. 1, § 15 and art. V, § 10. Consequently, in Texas, the "traditional distinctions between actions at law and suits in equity have never carried the procedural significance accorded to them in other states of the Union." *Fontenot,* 919 S.W.2d at 715 (quoting 1 ROY W. MCDONALD, TEXAS CIVIL PRACTICE § 4:4 (rev. 1992)). The law in Texas, then, is that the right to a jury trial extends to disputed issues of fact in equitable, as well as legal, proceedings. *Fontenot,* 919 S.W.2d at 715. But, it is equally clear that a jury may not

cited by this court do not reflect the position of any member of the Institute. Nevertheless, those sections cited by this court reflect our opinion on the issue, regardless of subsequent approval or disapproval by the Institute.

determine the expediency, necessity or propriety of equitable relief. *Id.* (citing *State v. Texas Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979)). So while the parties are entitled to have the jury determine whether there has been a breach of fiduciary duty, they are not entitled to have the jury determine the amount, if any, of the fee forfeiture because fee forfeiture is not an issue of fact, it is a remedy. As stated by the supreme court in *Caballero v. Central Power and Light Co.,* 858 S.W.2d 359, 361 (Tex.1993), "[W]e hold that when properly requested, jury trials are appropriate for finding the ultimate issues of fact ... but not for fashioning appropriate equitable relief." In light of this longstanding tradition, we are compelled to hold that the trial court is to determine the amount of forfeiture, if any, and in making this decision, is to consider the factors held by this court to be relevant to that determination.

In reaching our decision that fee forfeiture is a valid remedy, we do not confuse our role with that of the state bar disciplinary committee, whose job is to oversee violations of disciplinary rules in this state. That the disciplinary committee may reprimand or sanction an attorney for certain misconduct, however, provides no relief to the client whose trust and faith have been abused. While the disciplinary committee serves the role of maintaining standards of the legal profession, the courts serve the role of compensating the client for the injury created by the client's justifiable perception that he or she may have received less than the honest advice and zealous performance to which a client is entitled. *See Gilchrist v. Perl,* 387 N.W.2d at 415; *Perl v. St. Paul Fire & Marine Ins. Co.,* 345 N.W.2d at 213; *Rice v. Perl,* 320 N.W.2d at 411.

In sum, we hold that Texas recognizes fee forfeiture in the context of the attorney-client relationship. To be entitled to forfeiture, the client need only prove the existence of a breach; proof of causation and/or damage is not necessary. The amount of forfeiture, if any, is to be determined by the trial court, using the factors set out in this opinion. Because the trial court determined a fact issue exists as to one of the breaches claimed by appellants, i.e., whether appellants ob-

tained an aggregate settlement on behalf of appellees, we must reverse and remand this case to allow appellants an opportunity to prove a breach. That there may be no causation and no damage as a matter of law is irrelevant to the availability of the remedy of fee forfeiture; proof of breach is enough. Thus, the trial court erred in finding that proof of causation and damage is a prerequisite to the invocation of the remedy of fee forfeiture. We sustain point of error three.

## II. THE AFFIDAVIT OF ROBERT MALINACK

In addition to alleging several breaches of fiduciary duty, appellants alleged fraud, negligence, breach of contract, and violations of the DTPA. These claims require proof of causation and damage, and therefore, we must review appellants' contentions regarding the alleged deficiencies of Robert Malinack's affidavit, an affidavit submitted by appellees to support their motion for summary judgment.

In point of error two, appellants argue the trial court erred in granting summary judgment because the affidavit of Robert Malinack (1) does not concern a subject upon which the trier of fact must be guided solely by expert testimony, and (2) is too conclusory to support summary judgment. We disagree with both contentions.

In his affidavit, Malinack essentially avers that appellees caused no damage to appellants, thereby negating the elements of causation and damage; he ultimately concludes the settlements appellants received were reasonable. A movant can establish its right to summary judgment solely on the uncontroverted testimony of an expert witness if the subject is one in which the trier of fact would be guided solely by the opinion testimony of experts. *Anderson v. Snider,* 808 S.W.2d 54, 55 (Tex.1991); *Republic Nat'l Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986); *Perez v. Cueto,* 908 S.W.2d 29, 31 (Tex.App.—Houston [14th Dist.] 1995, no writ); Tex.R. Civ. P. 166a(c). We have found no cases specifically addressing the issue of whether causation and damage, in a claim based on alleged breaches of fiduciary duty by a lawyer, are matters upon which the

trier of fact must be guided solely by expert testimony. There are cases, however, addressing this issue in the context of a legal malpractice claim based on negligence.

These cases, *Delp v. Douglas*, 948 S.W.2d 483, 495 (Tex.App.—Fort Worth 1997, pet. filed 9–15–97), and *Onwuteaka v. Gill*, 908 S.W.2d 276, 281 (Tex.App.—Houston [1st Dist.] 1995, no writ), hold that expert testimony on proximate cause is required where the determination of the issue "is not one that lay people would ordinarily be competent to make." *See also, 2175 Lemoine Ave. Corp. v. Finco, Inc.*, 272 N.J.Super. 478, 640 A.2d 346, 353 (1994); *Meyer v. Mulligan*, 889 P.2d 509, 516 (Wyo.1995). This rule was previously applied in medical malpractice cases, *Pennington v. Brock*, 841 S.W.2d 127, 129 (Tex.App.—Houston [14th Dist.] 1992, no writ); *Hart v. Van Zandt*, 399 S.W.2d 791, 792 (Tex.1965); *Chapman v. Wilson*, 826 S.W.2d 214, 220 (Tex.App.—Austin 1992, writ denied); *Wendenburg v. Williams*, 784 S.W.2d 705, 706 (Tex.App.—Houston [14th Dist.] 1990, writ denied), which do not require expert testimony when the malpractice "is plainly within the knowledge of laymen." *See Onwuteaka*, 908 S.W.2d at 281. We see no reason why the rule should not apply to this case as well. Thus, the question before us is whether the causation and damage issues are plainly within the common knowledge of laymen.

Settlements of personal injury and wrongful death cases involve experience and specialized knowledge. An attorney must review and analyze, among other things, the underlying liability facts, the identity of the defendant, the damage elements available to a plaintiff, the specific injuries or losses incurred by a plaintiff, the settlement amounts received in similar cases, the complexity of the case, as well as the strength and resources of the opposing counsel. This information and its evaluation in the context of a settlement offer requires specialized knowledge of the law. This is a skill not ordinarily possessed by lay persons. A lay jury cannot be expected to ascertain, without guidance from a legal expert, whether an attorney obtained a reasonable settlement for his or her client. We hold that whether the attorneys in this case caused damage to appellants is a question upon which the trier of fact must be guided solely by expert testimony. Therefore, the Malinack affidavit does concern an issue upon which the trier of fact must be guided solely by expert testimony.

■ Now we must address whether the Malinack affidavit is sufficient to establish appellees' right to judgment as a matter of law. Appellees contend the affidavit is comprised of mere legal conclusions and is therefore insufficient to support summary judgment.

■ Summary judgment may not be granted on conclusory evidence. *Aldridge v. De Los Santos*, 878 S.W.2d 288, 296 (Tex. App.—Corpus Christi 1994, writ dism'd w.o.j.). Affidavits containing conclusory statements are not competent summary judgment proof. *Id.* If an expert's testimony is comprised of mere legal conclusions or conclusory statements, it is insufficient to support summary judgment. *Anderson*, 808 S.W.2d at 55; *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984). An expert's opinion is conclusory and will not support summary judgment if it does not contain the basis or reasoning for the opinion. *Jensen Constr. Co. v. Dallas County*, 920 S.W.2d 761, 768 (Tex.App.—Dallas 1996, writ denied) (citing *Anderson*, 808 S.W.2d at 55)).

The Malinack affidavit states:

\* \* \*

5. I have reviewed the following, and base my opinions in this Affidavit, in part, upon the following:

a. Plaintiffs' Original Petition;

b. Affidavit of David Burrow;

c. Affidavit of Blake Tartt;

d. Plaintiff Case Analysis on each Plaintiff;

e. Plaintiff deposition summaries;

f. Excerpts from David Burrow's deposition relating to liability issues.

My opinions as expressed are based upon facts in these documents, as well as upon my experience and training as a personal injury civil trial lawyer.

6. Based upon the foregoing my opinions are:

It is important as an attorney in evaluating cases for settlement to consider the underlying liability facts involved, and in this instance the underlying liability facts with reference to the Phillips explosion of 1989. In my opinion it is critical to the settlement evaluation of the cases arising out of that explosion to consider the identity of the employer of the plaintiffs and/or decedents at the time of the explosion. Moreover, I believe that it is important to consider the elements of damages available to each Plaintiff, whether it be an injury case, or a death case, and to consider the losses that occurred to each Plaintiff as a result of the explosion. I have considered the underlying liability facts, the employment status of the Plaintiffs and/or decedents, and have considered the elements of and damage facts on each Plaintiff to render my opinions expressed in this Affidavit. The Plaintiffs were caused no damages by reason of any and/or all of the allegations made by them against the Defendants. Each and all of the Plaintiffs were reasonably and fairly compensated by way of settlement for those elements of damages that were available to them as Plaintiffs in the cases against Phillips, taking into account the employment, liability, and injury facts involved. I have not addressed the issues concerning the allegation of malpractice, wrongdoings, or omissions which allegedly resulted in damages to Plaintiffs. Irrespective of the validity of those allegations, it is my opinion that the Plaintiffs have not been damaged as a result of any of these allegations, whether groundless or valid.

Deciding whether an affidavit is sufficient, or instead, is conclusory and without basis can be a difficult matter. Nonetheless, it is a decision we must reach. In those cases in which the courts found an expert's affidavit insufficient to support summary judgment, they often based their findings on the expert's failure to provide any legal basis or reasoning for his or her conclusion. *See Lara v. Tri–Coastal Contractors, Inc.*, 925 S.W.2d 277, 279 (Tex.App.—Corpus Christi 1996, no writ); *Hamlin v. Gutermuth*, 909 S.W.2d 114, 117 (Tex.App.—Houston [14th Dist.] 1995, writ denied).

We do not find the Malinack affidavit deficient in this respect. Malinack carefully included the legal basis and reasoning for his opinion that nothing appellees did caused any damage to appellants and this reason is more than a general statement or conclusory opinion. Malinack's affidavit shows that he formed a specific opinion, taking into account numerous factors an attorney must necessarily consider in determining whether to settle a lawsuit, and using specific information about each plaintiff in applying to those factors. Particularly, Malinack stated that he considered the underlying liability facts, employment status, available damages, and specific damage facts "on each Plaintiff" in rendering his opinion that nothing appellants did caused any damage to appellees.

Malinack could have addressed the issues by listing each plaintiff separately, with the relevant data concerning them. Although that may have been clearer and more direct, we are of the opinion it is not required. As written, the affidavit gave appellants enough information, by referring to the specific items relied on, to enable them to controvert it. In fact, appellants did understand precisely what Malinack relied on because one of their experts, Dr. Edwards, referred to the case summaries Malinack consulted and proclaimed them deficient. Malinack also could have listed what he considered to be the components of damages for each plaintiff, such as actual damages, mental anguish, and past and future pain and suffering, and this, too, would have made the affidavit clearer, but it is not deficient for lack of these items.

We hold the affidavit is not conclusory, and is sufficient to negate the elements of causation and damage as a matter of law. In short, based on the Malinack affidavit, and setting aside the issue of fee forfeiture, appellees were entitled to judgment as a matter of law on causation and damages and, therefore, we overrule point of error two.

## III. THE AFFIDAVITS OF ROBERTA EDWARDS AND HARRY WILSON

The burden then shifted to appellants, as non-movants, to introduce evidence

that raised an issue of fact on the elements of causation and damage. *See Lentino v. Cullen Ctr. Bank and Trust,* 919 S.W.2d 743, 745 (Tex.App.—Houston [14th Dist.] 1996, writ denied) (stating that if movant's motion and summary judgment proof facially establish right to judgment as a matter of law, burden shifts to non-movant to raise fact issues precluding summary judgment); *Holcomb v. Randall's Food Markets, Inc.,* 916 S.W.2d 512, 514 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (stating that once defendant has produced competent evidence to negate necessary element of non-movant's cause of action, burden shifts to non-movant to introduce evidence that raises issue of fact on that element); *Hubert v. Illinois State Assistance Comm'n,* 867 S.W.2d 160, 162 (Tex.App.—Houston [14th Dist.] 1993, no writ) (stating burden never shifts to non-movant until movant has established entitlement to summary judgment as a matter of law).

■ Because we have held that expert testimony was required, appellees had to present expert evidence raising an issue of fact on the elements of causation and damage. *See Anderson,* 808 S.W.2d at 55 (holding that lay testimony is insufficient to refute an expert's testimony); *Rallings v. Evans,* 930 S.W.2d 259, 264 (Tex.App.—Houston [14th Dist.] 1996, no writ) (same); *Perez,* 908 S.W.2d at 31 (same). Therefore, now we must consider the affidavits and other summary judgment proof appellants allege raise fact issues precluding summary judgment.

In their fourth point of error, appellants raise two contentions. First, they contend summary judgment should not have been granted in favor of appellees because the affidavits of Roberta Edwards and Harry Wilson controvert the Malinack affidavit.[11] Second, appellants claim that even if the affidavits of Edwards and Wilson are insufficient to create a fact issue precluding summary judgment, certain other evidence in the record is sufficient and raises fact issues precluding summary judgment. This other evidence includes deposition testimony and affidavits containing statements by individual appellants in which they evaluate their own claims and conclude they were under compensated and therefore, suffered injury. Additionally, appellants cite to "anecdotal evidence from the lawyers' files regarding dollar amounts assigned to each claimant."

■ We hold the affidavits and deposition testimony of certain individual appellants are insufficient to raise a fact issue precluding summary judgment. As we discussed in regard to the Malinack affidavit, the question of damages in this case was directly dependent on whether appellants received reasonable settlements. This question was a matter upon which the jury had to be guided solely by expert testimony. *See* TEX.R. CIV. P. 166a(c). And, as we noted above, lay testimony is insufficient to refute an expert's testimony. *See Anderson,* 808 S.W.2d at 55; *Perez,* 908 S.W.2d at 32; *Selig v. BMW of North America, Inc.,* 832 S.W.2d 95, 100 (Tex.App.—Houston [14th Dist.] 1992, no writ). As a result, appellants' own evaluations and conclusions regarding their settlements do not raise a fact issue precluding summary judgment.

■ As to the notes in the attorneys' files concerning a dollar amount assigned to each plaintiff, this "anecdotal evidence" relied upon by appellants goes to whether an aggregate settlement occurred, not whether appellees caused any injury or damage to appellants. It too, is insufficient to create a fact issue on causation or damages.

---

11. Appellants also claim the trial court abused its discretion by striking Edwards' affidavit. Appellee John E. Williams, individually and as a partner in Umphrey, Burrow, Reaud, Williams & Bailey, objected to and moved to strike Edwards' affidavit on the ground that she was not designated as an expert witness and appellants' deadline to designate experts had expired. In its judgment, the trial court denied the objection; however, the trial court also specifically stated "the Affidavits of Roberta Edwards, M.D. and Harry Wilson do not controvert the Affidavit of Robert Malinack with competent evidence." Thus, it appears the trial court did consider Edwards' affidavit, but found that it was insufficient to raise a fact issue precluding summary judgment. In their brief, appellees admit the trial court considered the affidavit and raise no complaint to its consideration. In light of these facts, we will consider the Edwards affidavit in our review, and therefore, it will be unnecessary to determine whether the trial court abused its discretion in sustaining the objection based on the competency of the evidence.

Thus we are left with the Edwards and Wilson affidavits. Appellants introduced these affidavits to controvert the Malinack affidavit. To accomplish this result the affidavits must present some probative evidence of the facts at issue, specifically causation and damages. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex.1996).

■ We look first at the Edwards affidavit. The trial court found that Edwards' affidavit did not controvert Malinack's affidavit "with competent evidence." The trial court did not explain why the evidence in the Edwards affidavit was incompetent. We have reviewed the affidavit and agree with the trial court. Edwards' affidavit is incompetent, and therefore, does not raise a fact issue defeating summary judgment because there is nothing in the affidavit to show she is competent to testify on the reasonableness of settlements in personal injury and wrongful death cases.

Roberta M. Edwards stated her qualifications as an expert in paragraph two of her affidavit: [12]

> I am a medical doctor. I have been licensed since 1963 and am currently licensed to practice medicine in the state of Oklahoma. I am also a lawyer. I have been licensed to practice law by the State of Oklahoma since 1982.

■ Texas Rule of civil Procedure 166a(f) requires that in summary judgment proceedings, supporting and opposing affidavits "shall set forth such facts as would be admissible in evidence, and *shall show affirmatively that the affiant is competent to testify to the matters stated therein.*" *United ed Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex.1997). (quoting Tex.R. Civ. P. 166a(f)) (emphasis added). When a party relies on expert testimony, the party must prove the expert's qualifications and the burden of establishing an expert's qualifications is on the offering party. *Longoria*, 938 S.W.2d at 31. The standard for admissibility of evidence is the same in a summary judgment proceeding

as in a regular trial. *Id.* at 30. In the summary judgment context, then, if a party relies on an expert's affidavit to support or oppose a motion for summary judgment, proof of the expert's qualifications must necessarily be stated in his or her affidavit.

To be qualified to render an expert opinion, the party offering the expert testimony must show the expert has "knowledge, skill, experience, training, or education" that would "assist the trier of fact." *Id.* at 30–31 (citing Tex.R. Civ. Evid. 702). If the party offering the expert testimony fails to make the showing required by rule 702, the trial court acts within its discretion in rejecting such testimony as incompetent. *See id.* at 31.

We find appellants completely failed to carry their burden of establishing Edwards' qualifications. Her mere recitation that she is a lawyer, licensed by the state of Oklahoma since 1982, is inadequate to establish that she is competent to testify to the matters stated in her affidavit. *See* Tex.R. Civ. P. 166a(f). Edwards attempted to render an opinion on the alleged unreasonableness of the settlements received by the appellants. The settlements arose out of personal injury and wrongful death claims. The affidavit does not state whether Edwards actively practices law, much less in the relevant fields of wrongful death and personal injury. She does not state whether she even *has* any experience in personal injury law, or has ever evaluated, tried, or settled such a case. For comparison, we note the extensive statement of qualifications listed by Malinack. In his affidavit, Malinack stated that he has been a civil trial attorney for thirty-three years, settling and trying personal injury and death cases, he knows the duties and responsibilities of attorneys practicing in personal injury law and he is familiar with evaluating, trying, and settling personal injury and death cases. We conclude that the Edwards affidavit failed to establish that she is qualified to render the opinions stated in her affidavit

---

12. Edwards' qualifications as a medical doctor are irrelevant insofar as the issue of causation and damage are concerned. As we discussed with regard to the Malinack affidavit, the question of causation and damage in this case was a matter requiring expert *legal* testimony. Thus, our review is limited to the two statements in Edwards' affidavit concerning her qualifications in the legal field.

and hold the affidavit does not raise a fact issue that would defeat summary judgment.

■ Appellants also introduced the affidavit of Harry A. Wilson, an attorney licensed by the state of Indiana. The majority of the Wilson affidavit addresses the issue of breach of fiduciary duty. As we have already stated, the trial court found there was a fact issue on this question. But, in one paragraph, Wilson addresses the causation and damage:

> The plaintiffs were damaged by the wrongful and improper conduct of the defendant lawyers by (1) the loss of the important right of the plaintiffs to control and make decisions regarding the ultimate disposition of the claims of the plaintiffs against the Phillips defendants, (2) the uninformed and involuntary waiver by the plaintiffs of their right to have their case tried to a jury, and (3) the difference between (a) the amount received by the plaintiffs and (b) the amount they should have received if the case was handled properly by lawyers without breach of professional standards and fiduciary duties, *which exact amount is incapable of exact calculation* unless and until the plaintiffs have the opportunity to reopen the case against the Phillips defendants with competent, professional, and ethical legal representation and individual not aggregate handling of the case.

(emphasis added)

■ While Wilson does opine that appellants were damaged, he also states that the amount of the damage is incapable of calculation barring a reopening of the underlying suit against Phillips. In effect, the Wilson affidavit says that there is no figure, no specific or estimated amount or range of money appellants should have received or by which they were damaged. According to the affidavit, determining appellants' damages is impossible without going through settlement negotiations once again with lawyers who are faithfully adhering to their fiduciary duty to the client. A statement that damages are incapable of calculation is legally insufficient evidence of damages. *See, e.g., International & G.N.R. v. Simcock*, 81 Tex. 503, 17 S.W. 47 (1891) (holding that proof is required to show the extent and amount of damages). It

is, in fact, no evidence of damages. *See Hall v. Stephenson*, 919 S.W.2d 454, 466 (Tex. App.—Fort Worth 1996, writ denied) (holding that equivocal statements or statements based on affiant's "best knowledge" constitute no evidence). If the amount is unascertainable, too illusory for one to determine in a trial of the case, then under our system the party is not entitled to receive damages. For example, if Wilson's opinion were read to a jury, a jury would not have sufficient evidence before it on which to render an amount of damages, because the jury would not have received any evidence of an amount of damages. If that jury did give an amount of damages on appeal we would be obligated to say that it was not supported by any evidence. *See St. Paul Surplus Lines Ins. Co., Inc. v. Dal–Worth Tank Co., Inc.*, 917 S.W.2d 29, 61 (Tex.App.—Amarillo 1995, no writ) (holding evidence legally insufficient to support jury determination that future damages would continue for 10 years when expert testified damages would continue for "several years" and conceded that he could not give a set number of years.)

Thus, we hold that the Wilson affidavit did not controvert the Malinack affidavit. Having concluded that neither of plaintiff's experts controverted the Malinack affidavit, we overrule point of error four.

## IV. DECISION TO STRIKE FOUR PLAINTIFFS

We now turn to the last point of error raised by appellants, their fifth point of error. In it appellants complain the trial court erred in striking four plaintiffs added in appellants' First Amended Original Petition. Plaintiffs Gary McPherson, Jason Campbell, Justin Campbell, and Jaret Campbell were first added as plaintiffs in appellants' First Amended Original Petition filed January 25, 1995. When the petition was filed, appellees objected on grounds of lack of service of citation and the untimeliness of the appearance of these four plaintiffs. Relying on rule 124, appellees contend the trial court properly struck the four plaintiffs because these plaintiffs had failed to serve appellants with process and appellants did not waive service. *See* TEX.R. CIV. P. 124 (stating that no judg-

ment shall be rendered against any defendant unless there is service, acceptance or waiver or process, or an appearance); *Commodore County Mut. Ins. Co. v. Tkacik,* 802 S.W.2d 913, 914 (Tex.App.—Amarillo 1991), *clarified on reh'g,* 809 S.W.2d 630 (Tex. App.—Amarillo 1991, writ denied). The policy underlying rule 124 is to assure the defendant knows about the proceedings and can, therefore, defend against them. *Terry v. Caldwell,* 851 S.W.2d 875, 876 (Tex.App.— Houston [14th Dist.] 1993, no writ).

 Rule 63 of the Texas Rules of Civil Procedure provides that parties may amend their pleadings freely. TEX.R. CIV. P. 63. The only limitation to free amendment is that pleadings offered within seven days of the date of trial or thereafter shall be filed only after leave of the judge is obtained. *Id.; Chapin v. Texas Sand & Gravel Co.,* 844 S.W.2d 664, 665 (Tex.1992); *Rose v. Kober Fin. Corp.,* 874 S.W.2d 358, 361 (Tex.App.— Houston [14th Dist.] 1994, no writ). The rule further provides the judge shall grant such leave "unless there is a showing that such filing will operate as a surprise to the opposite party." *Id.*

According to appellees' own objection, the First Amended Original Petition, which added the four additional plaintiffs, was filed "less than two weeks before trial," not less than seven days. Because it was filed more than seven days before trial, appellants were entitled to amend their petition without leave of court. *See Chapin,* 844 S.W.2d at 665; *Rose,* 874 S.W.2d at 361. Assuming the petition was filed less than seven days before trial, the trial court should still have allowed the amendment unless appellees showed prejudice or surprise. *See Porter v. Nemir,* 900 S.W.2d 376, 384 (Tex.App.—Austin 1995, no writ). In their objection to the additional plaintiffs, appellees did not allege surprise or prejudice, much less demonstrate their existence.

Thus, assuming the petition was filed less than seven days before trial, appellants were free to amend their petition under rule 63 because there was no showing of prejudice or surprise. *Cf. American Petrofina, Inc. v. Allen,* 887 S.W.2d 829, 831 (Tex.1994) (holding defendants failed to meet burden to plead to prove limitations because they presented no summary judgment proof that they were prejudiced by plaintiffs' naming, omission, and renaming of a plaintiff in the petitions). The only question remaining is whether the additional plaintiffs could be struck because they failed to provide service of citation on appellees.

 It has long been the rule in this state that a defendant who has been served but has not answered must be notified of every amendment which sets up a new cause of action or requires a more onerous judgment of him. *Weaver v. Hartford Accident and Indem. Co.,* 570 S.W.2d 367, 370 (Tex. 1978); *Rabb v. Rogers,* 67 Tex. 335, 3 S.W. 303, 304 (1887); *Payne & Keller Co. v. Word,* 732 S.W.2d 38, 42 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Reyman v. Reyman,* 308 S.W.2d 595, 597 (Tex.Civ. App.—Waco 1957, writ dism'd); 59 TEX. JUR.3D *Process, Notices, and Subpoenas* § 8 (1988). If, however, the defendant has pleaded to the action or otherwise entered an appearance, he is before the court for all purposes and is charged with notice of all amendments thereafter filed, and new citation is not necessary. *Rabb,* 3 S.W. at 304 (1887); *Morrison v. Walker,* 22 Tex. 18, 20 (1858); *Citizens State Bank of Dickinson v. Bowles,* 663 S.W.2d 845, 849 (Tex.App.— Houston [14th Dist.] 1983, writ dism'd); *Slattery v. Uvalde Rock Asphalt Co.,* 140 S.W.2d 987, 991 (Tex.Civ.App.—Beaumont 1940, writ ref'd); 59 TEX. JUR.3D *Process, Notices, and Subpoenas* § 8 (1988).

 In addition, even as long ago as 1883, Texas courts have held that a defendant who is in court by reason of having filed an answer is not entitled to service of new process after an amendment of the plaintiff's petition even if the amendment brings new parties into the case. *Roberson v. McIlhenny, Hutchins & Co.,* 59 Tex. 615, 617 (1883); *Blakeney v. Johnson County,* 253 S.W. 333, 334–335 (Tex.Civ.App.—San Antonio 1923, writ dism'd); *Pecos & N.T. Ry. Co. v. Porter,* 156 S.W. 267, 269 (Tex.Civ.App.—Amarillo 1913, no writ); 59 TEX. JUR.3D *Process, Notices, and Subpoenas* § 9 (1988). Specifically, if the plaintiff amends his original petition

to add the name of an additional plaintiff, it does not constitute a new cause of action requiring additional service of process. *Roberson*, 59 Tex. at 617; *Porter*, 156 S.W. at 269. As the supreme court stated in *Roberson*, "It would not be in keeping with the spirit of our very liberal law of amendment, to hold that such changes in the names of the parties set up a new cause of action ..." 59 Tex. at 617; *see Laughlin v. Tips*, 8 Tex.Civ. App. 649, 28 S.W. 551, 552 (San Antonio 1894, no writ).[13]

In this case, appellees answered the original petition, and therefore, were bound to take notice of the pleading that added the four additional plaintiffs. They obviously did take notice, because they quickly filed an objection to the addition of the four plaintiffs. Based on the cases cited above, we hold the addition of the four plaintiffs did not set up a new cause of action, and service of citation from these plaintiffs was not required. Therefore, the trial court erred in striking plaintiffs Gary McPherson, Jason Campbell, Justin Campbell, and Jaret Campbell. We sustain point of error five.

## V. CONCLUSION

In conclusion, we sustain point of error three concerning the fee forfeiture issue and hold that fee forfeiture is recognized in this state and requires only proof of a breach of fiduciary duty. We also sustain point of error five and hold the trial court erred in striking plaintiffs Gary McPherson, Jason Campbell, Justin Campbell, and Jaret Campbell. We overrule point of error two and hold the Malinack affidavit was sufficient to support summary judgment on those claims where causation and damage was necessary. We also overrule point of error four and hold that none of the summary judgment evidence submitted by appellants was sufficient to raise a fact issue.[14] Based on these rulings, we reverse the trial court's judgment and remand the case. Upon any trial of this case, the only issues remaining are whether there was a breach of any fiduciary duty, and if so, the amount, if any, of the fee forfeiture. The issues of causation and damage as to all other claims have been negated as a matter of law.

---

13. This rule is analogous to the rule that an intervener need not have formal service of process issued on a defendant who has made an appearance in a case. 1 McDonald, Texas Civil Practice, § 5.81.

14. As we noted at the beginning of this opinion, point of error one is a general point of error complaining that the trial court erred in granting summary judgment. The remaining points of error are specific complaints about the summary judgment. By ruling on points of error two through five, we have ruled on point of error one.