Opinion issued August 28, 2008

















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00719-CV






ANTHONY AUTHORLEE, DEXTER BURNETT,

ROBERT DEROUSSELLE, JOHN HENRY YOUNG,

JEROME STUBBLEFIELD, AND FLOYD MORAN, Appellants


V.


TUBOSCOPE VETCO INTERNATIONAL, INC., AMF INCORPORATED,
AND MINSTAR, INC., Appellees






On Appeal from the 295th District Court

Harris County, Texas

Trial Court Cause No. 1998-03885B






DISSENTING OPINION

 I respectfully dissent. Appellants are mass tort plaintiffs. In six issues, they
argue, as they did in the trial court, that their individual settlement agreements are
part of an undisclosed aggregate settlement agreement reflected in the agreed
judgment and that both their individual settlement agreements and the agreed
judgment are "void as against public policy" and should be set aside and a new trial
ordered. Appellants contend the settlement agreement is void (1) because their trial
counsel induced them to accept the aggregate settlement without disclosing that it
was an aggregate settlement, without disclosing the existence and nature of all the
claims involved in the aggregate settlement, and without disclosing the nature and
extent of the participation of each person in the settlement, in violation of Texas
Disciplinary Rule of Professional Conduct 1.08(f) and (2) because appellees,
defendants at trial, conspired with appellants' trial counsel to defraud appellants by
making material misrepresentations and omissions regarding the nature of the
negotiations and the settlement, both in the agreed judgment and in the settlement
documents appellees drafted and that were presented to each plaintiff to secure his
agreement to the agreed judgment. See Tex. Disciplinary R. Prof'l Conduct
1.08(f) (1991), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon
2005) (Tex. State Bar R. art. X, § 9). 

 I agree with appellants. I would hold that their individual settlement
agreements and the agreed judgment are void as against public policy and must be
set aside. Therefore, I would reverse the case and remand to the trial court for a new
trial.

BACKGROUND


 Appellants were among over a hundred plaintiffs who brought several different
suits against Tuboscope Vetco International, Inc., AMF, Inc., and Minstar, Inc., in
1998, along with other defendants, for injuries allegedly caused by their occupational
exposure to silicosis while working for AMF Tuboscope in Midland, Texas.

 In January 1999, appellants' trial attorneys, Shelton Smith and Scott Hooper,
approached the appellees with settlement demands. In one letter, Smith wrote:

 I am presently representing 55 former AMF Tuboscope sandblasters
who suffer from silicosis or mixed dust pneumonoconiosis as a result of
their employment at Tuboscope. Each of these 55 men has a serious
occupational lung disease. . . . 


 As of this date, I have filed 25 lawsuits against AMF, Inc. The other 30
diagnosed cases are ready to be filed. There may be more. . . .


 Appellees' counsel questioned the diagnoses and the expertise of the
diagnosing doctor, referred to prior settlements, and suggested a "global meeting" to
discuss settlements in these cases. About a month later, appellees' counsel again
wrote to appellants' counsel, indicating, inter alia, that , "[a]t this point in time, my
client and its insurers are not interested in negotiating a settlement in individual cases
on a case-by-case basis" or "on a subgroup basis." Rather, "my client and its carriers
are interested in a global settlement proposal. Accordingly, if you wish to resolve
these cases, I would suggest that you proceed with preparing a global settlement
proposal. . . . If the parties seem reasonably in contact with each other, then it may
be appropriate for all parties to proceed with a global mediation . . . ." Appellees'
counsel further indicated that "[t]o the extent that my client and its insurers are not
able to proceed with a global resolution of these matters, . . . that my client and its
insurers are not interested at this time in negotiating settlements on a piecemeal, case
by case or subgroup basis." 

 Shortly thereafter, the parties went to mediation. About half of the plaintiffs
were invited and told their cases might be discussed, and a few attended. They were
instructed not to bring anyone else. Appellants' former counsel, Smith, later testified
that his goal had been to settle all the claims for about $25 million. At mediation,
each side had different criteria it wished to use to establish the value of each
plaintiff's claim. The parties discussed a few cases individually as a means of reality
testing the effect of the matrix criteria each side proposed, but they did not discuss
settling the individual claim of any particular plaintiff. 

 After several days of mediation, appellees' attorney told the plaintiffs' counsel,
Smith, that so long as the individual demands did not exceed $45 million he would
recommend to his clients and their insurance carriers to settle the claims, but only if
95% of Smith's clients agreed. Smith agreed, and plaintiffs' and defendants'
attorneys signed a Rule 11 agreement memorializing their understanding. At least
twenty additional plaintiffs were added to the litigation after the mediation.
Appellants then recalculated the settlement amounts for each plaintiff. 

 After the mediation, Smith sent each appellant a letter detailing an offer of
settlement, based on numbers he had calculated using his matrix. The letters were
substantially the same, except for the settlement amounts. The letters stated, in part:

 I, [name of client], understand and acknowledge that my attorney,
Shelton Smith, has fully and completely investigated my claim for
damages arising from my occupational lung disease.


 I understand and acknowledge that my attorney, Shelton Smith, has
adequately, fully and competently worked up and prepared my claim for
damages arising from my occupational lung disease.


 I understand and acknowledge that my claim was negotiated
individually and not as part of any aggregate settlement.


 I understand and acknowledge that the AMF Defendants have made a
final offer of $[spreadsheet figure for the client] to fully and finally
compromise and settle all my claims against the AMF defendants.


 I understand and acknowledge that my attorney, Shelton Smith, has
recommended and advised me to accept this settlement and that it is in
the best [interest] of myself and my family to accept this settlement.


The settlement offers stated in the letters ranged from $209,000 to $662,000. (1) All but
one or two of the 178 or 179 plaintiffs with pending claims agreed to settle. 

 To effectuate the settlements, appellee AMF prepared--and each of Smith's
177 settling clients, including each appellant, executed--a Settlement, Indemnity,
Assignment and Release Agreement, as well as an affidavit and authorization to
settle. Each settlement agreement provided in part:

 Plaintiffs and Defendants have been involved in lengthy settlement
negotiations, involving a variety of settlement offers and proposals. 
This Agreement reflects the final settlement offer made by the
Defendants and accepted by Plaintiff. . . . Defendants' payment of the
settlement amounts stated herein are independent of its agreement to
make payments to other plaintiffs in the same or related lawsuits. 
Plaintiff and Defendants have negotiated this settlement based on the
individual merits of the Plaintiff's claims. Defendants have not made
any aggregate offer and this settlement is not part of any aggregate
settlement. 


Both appellees' counsel and appellants' former counsel testified that this language
was requested by appellants' former counsel and inserted verbatim into the settlement
documents by appellees' counsel.

 The settlement documents drafted by AMF's counsel and presented to each
plaintiff for his signature included a release of the settling defendants that released
"any and all past, present or future claims. . . arising out of or in any way connected
with any and all claimed injuries allegedly sustained by Plaintiff," any and all claims
"arising out of or in any way connected with those claims made by Plaintiff in the
above-captioned action," and "any and all claims for bad faith settlement practices
which might be asserted against Defendants and/or their insurers." In addition, each
settlement agreement and accompanying settlement affidavit prepared by AMF and
executed by each plaintiff contained a disclaimer of reliance, which stated:

 C) I have had the benefit of professional advice of attorneys and
physicians of my choosing, I am fully satisfied with the advice,
and have relied completely upon my own judgment together with
that professional advice.


The trial court granted the settling plaintiffs' motion to consolidate their cases. The
80th District Court of Harris County then approved the underlying settlement
agreements and found them to be "fair, reasonable, and just" and "in the best interests
of the Plaintiffs and Defendants." On December 21, 1999, it entered an agreed
judgment on the settlement (the "agreed judgment").

 In 2002, four appellants and eleven other settling plaintiffs terminated their
attorney-client relationship with Shelton Smith & Associates, engaged Robins, Cloud,
Greenwood & Lubel, LLP, and moved to retain and sever their claims. The court
granted their motion. In 2004, all six appellants sued Shelton Smith & Associates,
and appellees, the settling defendants, alleging that Smith fraudulently induced them
to enter into an aggregate settlement and that appellees conspired in that process. On
May 8, 2006, the trial court severed appellants' claims, making the agreed judgment
final as to them. Appellants then filed a motion for new trial, arguing that: (1) the
settlement agreement was void because it violated the aggregate settlement rule in the
Texas Rules of Professional Conduct, and, therefore, the agreed judgment was also
void; (2) appellees Tuboscope Vetco, AMF, and Minstar committed actual fraud in
connection with the settlement; and/or (3) Tuboscope Vetco, AMF, and Minstar
conspired to commit fraud with appellants' trial counsel in connection with the
settlement. 

 By order dated July 20, 2006, the trial court denied appellants' motion for new
trial and made findings of fact and conclusions of law. The trial court found that
appellants' trial attorney "violated Rule 1.08(f) of the Texas Disciplinary Rules, the
'aggregate settlement rule.'" However, relying on the dissent to the denial of the
motion for rehearing in Quintero v. Jim Walter Homes, the trial court concluded that
the violation did not void the agreed judgment. 709 S.W.2d 225, 232-33 (Tex.
App.--Corpus Christi 1985, writ ref'd n.r.e.). Next, the trial court stated, "As fact
finder, the court finds no actual fraud committed by the defendants in this case." 

 The court concluded that appellants could not prove reliance and that it is
"unreasonable for a person to rely on statements of the opposing party in settling
litigation." The court also concluded that "there can be no conspiracy to commit
fraud in the litigation setting."

 Appellants challenge the trial court's denial of their motion for new trial with
six issues on appeal:

(1) Did the trial court correctly find that there was an aggregate
settlement between the AMF defendants and the original six
plaintiffs that sued them?


(2) Are undisclosed aggregate settlements void as a matter of public
policy?


(3) If undisclosed aggregate settlements are void as a matter of public
policy, are they nevertheless enforceable by defendants that enter
into them with the knowledge that the Plaintiffs' lawyers have
deceived their clients about the character of the settlement?


(4) If undisclosed aggregate settlements are void as a matter of public
policy, are they nevertheless enforceable by defendants who
collude with Plaintiffs' counsel and allow the Plaintiffs' lawyers
to deceive their clients about the character of the settlement?


(5) If undisclosed aggregate settlements are void as a matter of public
policy, are they nevertheless enforceable by defendants who
knowingly include false representations in settlement agreements
prepared by defendants?


(6) Does a defendant have a duty to provide all material information
about the true nature of a settlement once he voluntarily includes
misleading representations about the nature of the settlement in
his settlement papers? If a defendant breaches such a duty and
thereafter secures a settlement, should such a settlement and
agreed judgment be set aside as a matter of law?

I would consider these issues together.STANDARD OF REVIEW


 Motion for New Trial


 We review a trial court's denial of a motion for new trial for abuse of
discretion. In re R.R., 209 S.W.3d 112, 114 (Tex. 2006) (per curiam). With respect
to determination of the facts, we will not substitute our judgment for that of the trial
court. Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). Even if the reviewing
court would have decided the issue differently, it cannot disturb the trial court's
decision unless it is shown to be arbitrary and unreasonable. Id. at 840. On the other
hand, review of a trial court's determination of the legal principles controlling its
ruling is much less deferential. Id. A trial court has no "discretion" in determining
what the law is or applying the law to the facts. Id. Thus, a clear failure by the trial
court to analyze or apply the law correctly will constitute an abuse of discretion, and
it may result in appellate reversal. Id. 

 Agreed Judgment

 In general, a party may not appeal from or attack a judgment to which he has
agreed, absent allegation and proof of fraud, misrepresentation, or collusion. Henke
v. Peoples State Bank of Hallettsville, 6 S.W.3d 717, 720 (Tex. App.--Corpus Christi
1999, pet dism'd w.o.j.); Bexar County Criminal Dist. Attorney's Office v. Mayo, 773
S.W.2d 642, 644 (Tex. App.--San Antonio 1989, no writ); Gillum v. Republic Health
Corp., 778 S.W.2d 558, 562 (Tex. App.--Dallas 1989, no writ); Charalambous v.
Jean Lafitte Corp., 652 S.W.2d 521, 525 (Tex. App.--El Paso 1983, writ ref'd n.r.e.). 
 Fraud and Civil Conspiracy

 The elements of fraud are: (1) that a material representation was made; (2) the
representation was false; (3) when the representation was made, the speaker knew it
was false or made it recklessly without any knowledge of the truth and as a positive
assertion; (4) the speaker made the representation with the intent that the other party
should act upon it; (5) the party acted in reliance on the representation; and (6) the
party thereby suffered injury. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex.
2001) (orig. proceeding) (citing Formosa Plastics Corp. v. Presidio Eng'rs. &
Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998)). When fraud is used, a release or
disclaimer of reliance and subsequent agreed judgment must be set aside regardless
of exculpatory language in the release. See Prudential Ins. Co. v. Jefferson Assocs.
Ltd., 896 S.W.2d 156, 162 (Tex. 1995); Rodriguez v. Am. Home Assurance Co., 735
S.W.2d 241, 242 (Tex. 1987); Kolb v. Tex. Employers' Ins. Ass'n, 585 S.W.2d 870,
871-72 (Tex. Civ. App.--Texarkana 1979, writ ref'd n.r.e.). The elements of civil
conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a
meeting of minds on the object or course of action; (4) one or more unlawful, overt
acts; and (5) damages as the proximate result. See Operation Rescue-Nat'l v. Planned
Parenthood, 975 S.W.2d 546, 553 (Tex. 1998). DISCUSSION

 The essential questions raised in appellants' six issues are (1) whether the
individual settlement agreements are void as against public policy because the
settlement was an undisclosed aggregate settlement that was actively misrepresented
to each appellant as an individually negotiated settlement of his own case and, if so,
(2) whether the agreed judgment is void and must be set aside. I would hold that the
individual settlement agreements and the agreed judgment are void, and I would order
that the settlement agreements and the agreed judgment be set aside and new trials
granted.

 An aggregate settlement occurs when an attorney who represents two or more
clients settles the entire case on behalf of those clients without individual negotiations
on behalf of any one client. Arce v. Burrow, 958 S.W.2d 239, 245 (Tex.
App.--Houston [14th Dist.] 1997), aff'd as modified, Burrow v. Arce, 997 S.W.2d
229, 247 (Tex. 1999); see Scrivner v. Hobson, 854 S.W.2d 148, 152 (Tex.
App.--Houston [1st Dist.] 1993, orig. proceeding). There is nothing illegal about an
aggregate settlement in itself. However, an attorney owes a duty of loyalty and good
faith to each client, and, therefore, "it is the ethical duty of an attorney who represents
multiple clients to obtain individual settlements for them unless those clients are
informed and consent." Burrow, 958 S.W.2d at 245. Thus, when an attorney enters
into an aggregate settlement without the informed consent of the affected clients, the
attorney breaches the fiduciary duty owed those clients. Id. 

 Moreover, the aggregate settlement rule incorporated into the Texas
Disciplinary Rules of Professional Conduct expressly requires full disclosure to each
client of "the existence and nature of all the claims or pleas involved" and of "the
nature and extent of the participation of each client in the settlement." Specifically, 
Texas Disciplinary Rules of Professional Conduct, Rule 1.08(f) states: 

 A lawyer who represents two or more clients shall not participate in
making an aggregate settlement of the claims of or against the clients .
. . unless each client has consented after consultation, including
disclosure of the existence and nature of all the claims or pleas involved
and of the nature and extent of the participation of each person in the
settlement. 


Tex. Disciplinary R. Prof'l Conduct 1.08(f).

 It is undisputed that, in this case, appellants' counsel violated Rule 1.08(f). 
The plaintiffs' attorneys not only failed to disclose to their clients, including
appellants, "the existence and nature of all the claims or pleas" involved in the
settlement and "the nature and extent of the participation of each person in the
settlement," they also actively misrepresented that the settlement was not an
aggregate settlement when it was, that their claims had been individually negotiated
when they had not been, and that the number of claimants was smaller than in fact it
was. With only those unrebutted misrepresentations before them, each plaintiff
signed an individual settlement agreement and affidavit and authorization of
settlement. These individual agreements were then presented to the trial court by the
parties and formed the basis of that court's finding that the settlement was fair and its
approval of the agreed judgment reflecting the terms of the aggregate settlement. 
Therefore, appellants' counsel not only violated Rule 1.08(f) and breached their
fiduciary duties to their clients, they also committed fraud. See In re FirstMerit Bank,
52 S.W.3d at 758 (reciting elements of fraud).

 Very importantly, however, the misrepresentations and omissions were not
confined to plaintiffs' counsel's representations to their clients. They were also
included in the settlement agreements and affidavits prepared by appellees' counsel
and relied upon and executed by each claimant, including each appellant, in
effectuating the settlement. Not only did the Settlement, Indemnity, Assignment and
Release Agreement drafted by appellees fail anywhere to state that the individual
settlement was part of a negotiated $45 million total recovery for all clients
represented by the Smith firm, but the Settlement, Indemnity, Assignment and
Release Agreement presented to each plaintiff, including each appellant, to induce
that plaintiff's agreement to the aggregate settlement, included the following
falsehoods:


 Plaintiffs and Defendants have been involved in lengthy
settlement negotiations, involving a variety of settlement offers
and proposals. 


 


 Defendants' payment of the settlement amounts stated herein are
independent of its agreement to make payments to other plaintiffs
in the same or related lawsuits.


 


 Plaintiff and Defendants have negotiated this settlement based on
the individual merits of the Plaintiff's claims. 

 Defendants have not made any aggregate offer;

 and this settlement is not part of any aggregate settlement. 


 Appellants argue that they were fraudulently induced to accept their individual
settlements and to sign these documents to effectuate the aggregate settlement and
procure the agreed judgment by the misrepresentations of appellees as well as by the
omissions and misrepresentations of their own counsel. They urge this court to
follow Quintero v. Jim Walter Homes, in which the Corpus Christi Court of Appeals
set aside an aggregate settlement made in violation of Disciplinary Rule 5-106 as void
as against public policy and void and reinstated an individual settlement procured for
the Quinteros but not disclosed to them. See 709 S.W.2d at 227-30. 

 Appellees argue that, unlike appellants' former counsel, who had a fiduciary
duty to his clients, they had no such duty and only inserted appellants' counsel's
representations into the settlement documents without change at the request of
appellants' counsel. They also point to the disclaimers of reliance and releases each
plaintiff signed and to the plaintiffs' affirmative representations that they relied solely
on the advice of their own counsel and on their own judgment in deciding to accept
their individual settlements and to authorize the agreed judgment. Appellees urge the
Court to follow the dissent in Quintero on motion for rehearing, which would have
followed "the established rule that the misconduct of one attorney [the plaintiff's
attorney] will not vitiate a settlement agreement so that a litigant is not bound by the
agreement." Id. at 236 (Benavides, J., dissenting).

 The majority accepts the appellees' argument. Relying on the trial court's
statement that "[a]ppellants all testified that they did not rely on any statements by
appellees or on the contents of the settlement agreement with the alleged false
statements or omissions," and citing appellants' 'concession' in their brief that "they
did not rely on any statements by appellees or on the contents of the settlement
agreement with the alleged false statements or omissions," the majority reasons that
the "[t]he trial court found that appellees did not commit actual fraud" and that "[w]e
cannot say the trial court erred in so doing." It, therefore, overrules appellants' fraud
claims. Authorlee v. Tuboscope, 01-06-00719-CV, slip op. at 17 (Tex.
App.--Houston [1st Dist.] Aug. 28, 2008, no pet. h.). 

 The majority likewise agrees with the trial court's legal conclusion that "there
can be no conspiracy to commit fraud in the litigation setting." Id. at 18. It observes
that this Court has previously found "no private cause of action for litigation
conduct." Id. at 18. Noting that the trial court in this case found that "[a]ll of the
actions of the defendants were in connection with the settlement of a lawsuit," the
majority again concludes that it "cannot say the trial court abused its discretion in
denying the motion for new trial on this basis." Id. at 19. 

 Finally, the majority disagrees that the individual settlement agreements were
part of an undisclosed aggregate settlement. Id. at 21. It finds, as a matter of fact,
that "[p]rior to the settlements, both sides conducted discovery, and they had
numerous and lengthy discussions regarding individual cases as well as similarities
and differences among the various cases" and that "in their authorizations to settle,
each appellant acknowledged that his claim was negotiated with other similar
claims." Id. at 20. Concluding that "there were individual negotiations on behalf of
appellants," it holds that "the trial court erred in concluding that the settlements here
were aggregate settlements." Id. at 21. 

 The majority does not address Quintero or any of the other cases relied on by
appellants, and it does not cite any applicable law in support of its legal conclusions
or its holding.

 Procedurally, I disagree with the majority's application of an abuse of
discretion standard to the trial court's legal conclusions that there was no fraud in the
settlement agreements and no civil conspiracy in this case. The trial court's
conclusions of law are not binding on this Court and are reviewed de novo. Eller
Media Co. v. City of Houston, 101 S.W.3d 668, 674 (Tex. App.--Houston [1st Dist.]
2003, pet. denied). I likewise disagree with the majority's application of a de novo
standard of review to the facts of the case in determining, contrary to the finding of
the trial court, that there was no aggregate settlement in this case. See Walker, 827
S.W.2d at 839.

 On the merits, I disagree with the majority's holding that there is no fraud in
this case because there is "no private cause of action for litigation conduct" and with
its holding that the trial court erred in concluding that the individual settlements were
part of an aggregate settlement.

 First, this is not a case where one attorney has sued his adversary. Therefore,
I find the majority's statement that there is no cause of action in such a situation
inapplicable to this case and inexplicable. Nor is it the case that defendants cannot
be sued for their actions "in connection with the settlement of a lawsuit." Authorlee,
01-06-00719-CV, slip op. at 19. Indeed, it is well established that they can be. See,
e.g., Quintero, 709 S.W.2d at 227-30 (voiding aggregate settlement in suit brought
by plaintiffs against their own counsel and defendants in underlying litigation);
Schlumberger Tech. Corp. v. Swanson, 959 S.W.2d 171, 178, 181 (Tex. 1997)
(holding that misrepresentations in settlement documents are actionable as fraud). 
Therefore, I cannot agree with the majority's conclusion that, on this issue as well,
the trial court did not "abuse[] its discretion." Authorlee, slip op. at 19.

 Second, I cannot agree with the majority's factual conclusion that the agreed
judgment is not an aggregate settlement and that the individual plaintiffs' claims were
not settled as part of an aggregate settlement, and thus I cannot agree with its
conclusion that the trial court erred in finding that the agreed judgment reflected an
aggregate settlement. The majority's factual finding that the plaintiffs' claims were
individually negotiated is belied by the record, which plainly shows that all claims
were negotiated as part of a single global settlement of the claims of all plaintiffs
represented by Smith for a fixed sum of money and apportioned according to a matrix
agreed upon by counsel for both plaintiffs and defendants. Its conclusion that a
single global settlement of the claims of multiple individual plaintiffs that satisfies
these criteria is not an aggregate settlement is contradictory to the definition of an
aggregate settlement in both Burrow, 958 S.W.2d at 245, and Rule 1.08(f) of the
Texas Disciplinary Rules of Professional Conduct (the aggregate settlement
disclosure rule). 

 I would hold that the agreed judgment reflects an aggregate settlement whose
terms were not disclosed and, in fact, were actively misrepresented to appellants. I
would further hold that appellees, the settling defendants, committed fraud and civil
conspiracy in procuring the consent of appellants to their individual settlements and
to the agreed judgment and that the individual settlement agreements and the agreed
judgment are, therefore, void as against public policy and should be set aside.

 Appellants do not allege that the defendants breached a fiduciary duty to them
or violated Rule 1.08(f), like their own counsel. Rather, appellants sued appellees,
the settling defendants, for the defendants' own false representations in the settlement
documents the plaintiffs were required to sign to effectuate the settlement and for the
defendant's conspiracy with the plaintiffs' attorneys in obtaining the individual
plaintiffs' agreement to the aggregate settlement through false representations and
material omissions. The question, therefore, is whether the false representations and
material omissions in the Settlement, Indemnity, Assignment and Release Agreements
are actionable under the circumstances of this case and, if so and if proved, what
remedy should follow.

 Material misrepresentations of fact and material omissions in settlement
documents are actionable as fraud. See Schlumberger, 959 S.W.2d at 178, 181. 
"[W]here a contract is induced by fraud, there is in reality no contract because there
is no 'real assent' to the agreement." Id. (quoting Edward Thompson Co. v. Sawyers,
111 Tex. 374, 234 S.W. 873, 874 (Tex. 1921)). Therefore, "the defrauded party is not
bound by any of the contractual provisions, 'including those relating to presentation
or guaranties which induced its execution.'" Id. (quoting Edward Thompson Co., 234
S.W. at 874-75). In order to vitiate the contract, however, "the fraud must be such
that it 'prevents the coming into existence of any valid contract at all.'" Id. (quoting
Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, 48 (Tex. 1937)). Fraud
by nondisclosure is a subcategory of fraud because, when a party has a duty to
disclose, nondisclosure may be as misleading as a positive misrepresentation of fact. 
Id. Reliance is an element of a claim of fraud by non-disclosure, as it is for any other
type of fraud. See id. Moreover, a release containing a disclaimer of reliance (such
as that in the settlement documents provided each plaintiff in this case) is a contract,
and, like any other contract, it is subject to avoidance on grounds of fraud or mistake. 
Id. at 178. Whether a disclaimer of reliance precludes a fraudulent inducement claim
depends on "[t]he contract and the circumstances surrounding its formation." Id. at
181. 

 In this case, quite apart from appellants' counsel's duty of disclosure, appellees
had a duty not to make misrepresentations of fact in the Settlement, Indemnity,
Assignment and Release Agreements that they drafted and that they required 95% of
the plaintiffs represented by the Smith firm to sign in order to effectuate the agreed
judgment. Nevertheless, appellees knowingly incorporated false information into
each Settlement, Indemnity, Assignment and Release Agreement, which the
plaintiffs' attorneys then presented to their clients for execution, and then, with the
plaintiffs' attorneys, appellees presented the executed individual settlement
agreements, affidavits, and authorizations to settle to the trial court, causing the court
to accept the terms of the aggregate settlement as fair and to approve the agreed
judgment. 

 The settling defendants knew that the settlement agreement was an aggregate
settlement for a total sum of $45 million, yet they failed to disclose that material fact
in any of the individual Settlement, Indemnity, Assignment and Release Agreements, 
affidavits, and authorizations to settle they drafted. They also knew that no plaintiff's
claims had been individually negotiated and settled. Rather, an interdependent matrix
agreed upon by plaintiffs' and defendants' counsel had been used to decide the value
of each plaintiff's claim. And they knew that after a sum had been apportioned to
each individual claimant in accordance with the matrix, additional plaintiffs had been
added who shared in the same total aggregate settlement, reducing each plaintiff's
original individual settlement. 

 Yet, knowing each of these material facts, and knowing, as attorneys, that Rule
1.08(f) of the Texas Rules of Disciplinary Rules of Professional Conduct required
disclosure to each of the settling plaintiffs of "the existence and nature of all the
claims or pleas involved and of the nature and extent of the participation of each
person in the settlement," the settling defendants withheld the information that each
plaintiff's settlement was part of a $45 million aggregate settlement, and they falsely
represented to each plaintiff in documents they drafted that "Defendant's payment
of the settlement amounts stated herein are independent of its agreement to make
payments to other plaintiffs in the same or related lawsuits"; that "Plaintiff and
Defendants have negotiated this settlement based on the individual merits of the
Plaintiff's claims"; and that "Defendants have not made any aggregate offer and this
settlement is not part of any aggregate settlement." 

 Appellees not only should have known of the falsity of these statements, which
they claim were simply passed on to them by appellants' counsel, they plainly did
know. And they knew the purpose to which these false statements were intended to
be put: they were intended by both plaintiffs' counsel and the settling defendants to
be presented to the individual settling plaintiffs to secure their agreement to the terms
of the aggregate settlement, to the benefit of both plaintiffs' counsel and the settling
defendants. With both their own counsel and appellees' counsel's collusion in the
misrepresentations made to them, appellants were in no position to discover the truth
regarding the aggregate settlement they were induced to approve. Instead, they relied
upon the representations in the documents provided to them, as evidenced by their
signatures accepting the factual representations in those documents as the basis for
their authorization of the settlement of their cases. Plaintiffs' counsel and the settling
defendants then presented the individual signed Settlement, Indemnity, Assignment
and Release agreements, affidavits, and authorizations to settle to the trial court as
evidence that the settlement was "fair and reasonable" in order to procure the court's
approval of the settlement terms and the agreed judgment. This is fraud under Texas
law. See In re FirstMerit Bank, 52 S.W.3d at 758 (reciting elements of fraud). (2) Nor
can I agree that, under the circumstances of this case, appellants are held to their
disclaimer of reliance on appellees' representations. See Prudential Ins. Co., 896
S.W.2d at 162 (holding that when fraud is used, release or disclaimer of reliance and
subsequent agreed judgment must be set aside). 

 Because plaintiffs' counsel and the settling defendants agreed upon their course
of action and cooperated in achieving the goal of obtaining the plaintiffs' acceptance
of the terms of the aggregate settlement and the trial court's approval of the agreed
judgment on the basis of false representations and material omissions, these facts also
rise to the level of civil conspiracy. See Operation Rescue-National, 975 S.W.2d at
553. I thus cannot agree with the majority's conclusion holding that "there can be no
conspiracy to commit fraud in the litigation setting," which simply adopts the trial
court's legal conclusion. See Authorlee, slip op. at 18. 

 I would hold that, under the circumstances of this case, appellees clearly
committed fraud in drafting the settlement agreements, authorizations of settlements,
and disclaimers they included in the agreements they knew were to be presented to
appellants by their counsel to effectuate the agreed judgments. They then conspired
with appellants' counsel to insure that 95% of the fraudulent agreements they drafted
were executed as a pre-condition to effectuating the aggregate settlement and
presenting the individual settlement agreements and the agreed judgment to the court.
Therefore, I would hold that the settlement agreements and the agreed judgment are
void as against public policy and that appellants are entitled to have them set aside. 
See Schlumberger, 959 S.W.2d at 181. 

 This holding is supported by the only other Texas law directly on point. 
Indeed, the scenario in this case is virtually identical to that in Quintero, 709 S.W.2d
225, urged by appellants, in which the Corpus Christi Court of Appeals held that an
aggregate settlement agreement in which the Quinteros' claims were included was
void as against public policy. In that case, the Quinteros' attorney, Hector Gonzales,
had filed a lawsuit on their behalf against Jim Walter Homes for violations of the
Texas Deceptive Trade Practices Act and the Consumer Credit Code. However,
because Gonzales had several hundred other similar cases, he arranged for another
attorney, Francis Gandy, to try the Quinteros' claims, with the result that the
Quinteros received a substantial verdict in their favor. Id. Meanwhile, Gonzales
negotiated an aggregate agreement for all his clients, including the Quinteros. 
Unaware of the verdict obtained by Gandy, the Quinteros agreed to share in the
settlement and signed a release of their claims against Jim Walter Homes. Id. at
227-28. Gonzales and Jim Walter Homes then moved to dismiss the Quinteros' suit
as a condition precedent to effectuation of the aggregate settlement. See id. Upon
being informed by Gandy of the much larger verdict in their favor, the Quinteros
revoked their consent to the motion to dismiss their individual suit. Id. at 228. The
attorneys for Jim Walter Homes nevertheless filed the motion to dismiss the
Quinteros' individual suit with the trial court, which granted it. Id. 

 On appeal, the supreme court ordered that the dismissal of the Quinteros' suit
be set aside, and it remanded the case to the trial court to determine whether Jim
Walter Homes could plead and prove an enforceable settlement agreement under the
release signed by the Quinteros. Quintero v. Jim Walter Homes, Inc., 654 S.W.2d
442 (Tex. 1983). On remand, the trial court held that the release was valid and
enforceable, although it found that Gonzales had violated former Rule 5-106, now
Rule 1.08(f), by not informing the Quinteros of the nature and settlement amounts of
all claims involved in the aggregate settlement and although it found that the
Quinteros had not been given a list showing the names and amounts to be received
by the other plaintiffs, as also required by the aggregate settlement disciplinary rule. 
709 S.W.2d at 228-29. The Quinteros appealed again, arguing that, because
Gonzales violated the Code of Professional Responsibility in the method by which
he acquired their consent, the release and settlement agreement were unenforceable. 
Id. at 229. 

 The Corpus Christi Court of Appeals, relying on Fleming v. Campbell, 537
S.W.2d 118 (Tex. Civ. App.--Houston [14th Dist.] 1976, writ ref'd n.r.e.), agreed
with the Quinteros. Quintero, 709 S.W.2d at 229. The Quintero court pointed out
that, in Fleming, the Court of Appeals had addressed the enforceability of a contract
formed in violation of a Disciplinary Rule DR 2-107, which provided that a lawyer
may not divide his fee with another, non-affiliated lawyer unless the client consents
after full disclosure of the fee division arrangement; the Fleming court had held that
the fee agreement procured without full disclosure was "as a matter of law against the
public policy expressed in Disciplinary Rule 2-107 that no attorney's fees shall be
divided unless the client's consent is obtained after full disclosure"; and the Fleming
court had, therefore, concluded that the fee agreement, "being violative of law and 
public policy is void and unenforceable." Id. (quoting Fleming, 537 S.W.2d at 146). 
The Quintero court reasoned analogously to the Fleming court:

 Like DR 2-107, DR 5-106 [now Rule 1.08(f)] requires that the
client be fully informed before his consent to an agreement is
obtained. Although the decision in Fleming was also supported
on another theory, namely lack of consideration for the alleged
contract, we find the reasoning of the Fleming court, as quoted
above, to be sound. The policy expressed in DR 5-106 is clearly
to ensure that people such as the Quinteros do not give up their
rights except with full knowledge of the other settlements
involved. That policy was violated when Gonzalez did not
inform the Quinteros of the matters required by DR 5-106.

Id. Like the Fleming court before it, the Quintero court observed, "Courts will not
enforce contracts made in contravention of the law or public policy of this State." Id.
(citing Woolsey v. Panhandle Ref. Co., 131 Tex. 449, 116 S.W.2d 675 (1938); Dodd
v. Harper, 670 S.W.2d 646, 650 (Tex. App.--Houston [1st Dist.] 1983, no writ)); cf.
Baron v. Mullinax, Wells, Mauzy & Baab, Inc., 623 S.W.2d 457 (Tex.
App.--Texarkana 1981, writ ref'd n.r.e.). It held, therefore, that the contract for the
release and settlement of the Quinteros' cause of action was void and unenforceable,
and it reversed and remanded the cause to the trial court with instructions to reinstate
the verdict in favor of the Quinteros in their individual suit. Id. at 229, 231. 

 I would hold that the exact same reasoning applies to the facts of this case and
mandates the same result.

 I realize that the result I believe mandated by this case is harsh when the agreed
judgment settled the claims of 177 plaintiffs for a large aggregate sum of money that
may well be fairly apportioned among the claimants, as the trial court found, and
when that agreed judgment allowed the defendants to put the uncertainty of litigation
over numerous similar claims behind them once and for all for a fixed sum of money. 
Nevertheless, I cannot agree with the proposition that counsel for the parties to an
aggregate settlement may collude to avoid making the disclosures required by the
disciplinary rules to procure an aggregate settlement, that attorneys may even actively
misrepresent the nature of the settlement to unsophisticated litigants, and that the
courts, in turn, may turn a blind eye to such wrong-doing out of an apparently
equitable concern that a large aggregate settlement that benefitted many people, both
plaintiffs and defendants, not be disturbed. Not to insist that the disclosure rule
governing aggregate settlements be followed in this case is to permit the rule to be
disregarded in every case.

 Accordingly, I would sustain appellants' first and second issues on appeal.


Conclusion

 I would reverse the judgment of the trial court and render judgment that
appellants' individual settlement agreements and the agreed judgment in the underlying
case are void as against public policy. I would remand the case to the trial court with
orders that appellants' settlement agreements and the agreed judgment be set aside and
that appellants be granted a new trial on their claims.





 Evelyn V. Keyes

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.


Justice Keyes, dissenting.
1. Anthony Authorlee ($488,000), Dexter Burnett ($384,000), Robert Derousselle
($209,000), Floyd Moran ($314,000), Jerome Stubblefield ($384,000), John Young
($662,000).
2. I would hold that the injury to the plaintiffs consisted in their not being able to present
their claims individually and in their being lured into an aggregate settlement in which
they were prevented by the actions of counsel on both sides from determining whether
their claims were settled fairly vis a vis the other plaintiffs. In other words, the harm
consisted in their being bound by their counsel's and the defendant's fraudulent
actions and conspiracy to a settlement agreement made in violation of public policy.